BRAGER & COMPANY, INCORPORATED, Plaintiff,

v.

LEUMI SECURITIES CORPORATION et al., Defendants.

No. 76 Civil 4110.

United States District Court,
S. D. New York.

April 12, 1977.

Solin & Breindel, New York City, for plaintiff.

Reavis & McGrath, New York City, for defendants Leumi Securities Corp. and Bank Leumi Le-Israel, B.M.; Stephen R. Steinberg, Joseph A. Clark, III, New York City, of counsel.

Parker, Chapin, Flattau & Klimpl, New York City, for defendant Bank Leumi Trust Co. of New York; Barry J. Brett, Stephen F. Harmon, Miriam Vogel, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Defendants Leumi Securities Corporation ("Leumi Securities"), Bank Leumi Le-Israel, B.M. ("Leumi Israel") and Bank Leumi Trust Company of New York ("Leumi New York") move to dismiss the complaint against them in this antitrust action on the ground that it fails to state a claim upon which relief can be granted.

Plaintiff, Brager & Company, Inc. ("Brager"), is a registered broker-dealer whose business consists primarily of the trading of bonds issued by the State of Israel. Plaintiff alleges that since 1952 it bought and sold such bonds before their maturity, thereby creating a secondary market, in which it was the "most significant dealer" until the sequence of events outlined in the amended complaint.

Defendant Leumi Israel is a large Israeli bank which, according to plaintiff, is highly diversified, ranks as one of the 100 largest banks in the world, and maintains close ties with the State of Israel. Leumi Israel is alleged to be the parent corporation and controlling shareholder of both Leumi New York, a domestic banking corporation, and Leumi Securities, a New York State corporation registered as a broker-dealer, which also specializes in the trading of Israeli bonds.

Plaintiff asserts that Leumi Securities, since it began trading Israeli bonds in 1967, has captured over sixty per cent of the market and has become the price leader for such bonds. Plaintiff, whose market share has been reduced to approximately forty per cent,[1] attributes Leumi Securities' success to its affiliation "and special relationship with Leumi Israel and Leumi New York." This relationship is alleged to provide Leumi Securities with financial advantages such as unsecured loans at low interest rates, guarantees and ready access to potential purchasers and sellers of Israeli bonds. Leumi Israel and Leumi New York are alleged to have close ties with a limited class of persons who, because of their special interest in Israel, invest in Israeli bonds, even though they have lower yields than similar securities; through these contacts Leumi Israel and Leumi New York are alleged to provide Leumi Securities with a ready market for the sale and purchase of Israeli bonds.

The amended complaint charges that the defendants have violated Sections 1 and 2 of the Sherman Act[2] by conspiring, acting and attempting to monopolize the trading market in Israeli bonds. The violations asserted rest, in part, on allegations that the defendants have improperly utilized their relationship to each other and their relationship with investors in Israeli bonds to eliminate plaintiff as a competitor or to minimize its business. The complaint also alleges that the defendants have violated Section 7 of the Clayton Act[3] by making corporate acquisitions that tended substantially to lessen competition in the market for Israeli bonds.

Plaintiff alleges that it and Leumi Securities are now the only two significant Israeli bond dealers. Its basic charge, however worded and whatever the legal theory it advances, is that but for Leumi Securities' entry into the secondary market under the sponsorship of its parent, Leumi Israel, plaintiff would continue to command a major portion of the market. In essence, plaintiff asserts that Leumi Israel, the deep-pocket parent, through the facilities of Leumi New York, has enabled Leumi Securities to engage in anticompetitive activities with the result that it has displaced plaintiff from its former position of leadership, foreclosed new firms from entering the business and prevented existing firms from expanding their share of the market.

The defendants, outraged by plaintiff's charges that they engaged in a conspiracy among themselves and with other alleged conspirators, urge that the charges are without factual foundation. However, on a motion to dismiss for failure to state a claim, the allegations of the complaint are assumed to be true, and the complaint must be upheld unless "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[4]

---

1. There are several minor dealers whose activities in the market are insignificant.

2. 15 U.S.C. §§ 1 & 2.

3. 15 U.S.C. § 18.

4. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hunt v. Mobil Oil Corp.,* 410 F.Supp. 10, 14 (S.D.N.Y.1975), *aff'd,* 550 F.2d 68 (2d Cir. 1977).

## ALLEGED VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT

Count I of the amended complaint charges that the defendants have violated Section 1 of the Sherman Act by engaging in a continuing combination and conspiracy in unreasonable restraint of commerce within the secondary market for Israeli bonds. The defendants allegedly carried out the conspiracy by threatening and intimidating Brager into abandoning its activities in the Israeli bond market; by maintaining unreasonably high, anticompetitive prices in that market; by using the defendants' allegedly unique relationship with customers having a special interest in Israel to influence such customers to sell and purchase Israeli bonds solely through Leumi Securities; and by using the defendants' other resources to preclude actual and potential customers in the Israeli bond market from transacting business with broke-dealers other than Leumi Securities.

The defendants argue that they are legally incapable of conspiring in violation of Section 1 because Leumi New York and Leumi Securities are subsidiaries of Leumi Israel and because no defendant competes with any other defendant. In the alternative, they assert that the complaint fails to state a claim because the alleged conspiracy and the various acts complained of are "inherent in the normal relationship existing between affiliated companies."

■ The mere fact of corporate affiliation does not suffice to render dealings between subsidiaries or between a subsidiary and its parent illegal under Section 1; nor, however, does the fact of affiliation or mutual ownership insulate corporations from liability for conspiracies in restraint of commerce.[5] The fact that the complaint alleges the defendants to be related entities is not by itself of special significance; rather, whether such entities are in fact mere instrumentalities of a single commercial unit, incapable of conspiring or combining with their parent, or separate units, capable of violating Section 1, will turn upon the independence of action enjoyed by the companies, the extent to which they are mutually owned and controlled, the degree, if any, to which they compete with one another or are held out to do so, and whether any of them were specifically incorporated or controlled to effect anticompetitive purposes.[6] The determination of these factual matters cannot be made upon a motion to dismiss but must await a hearing on the merits.

■ Similarly, the defendants' contention that the complaint alleges only actions inherent in the normal relations between affiliates, and not actions constituting an illegal conspiracy, must be rejected at this stage of the litigation. Given that the defendant would, in the requisite factual circumstances, be legally capable of conspiring in violation of Section 1, the complaint adequately alleges both a conspiracy and an object or result that, if accomplished even by otherwise lawful means, could amount to an unreasonable restraint of trade. The defendants' contrary assertion that "nor-

---

5. *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 141–42, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968); *Timken Roller Bearing Co. v. United States*, 341 U.S. 593, 598, 71 S.Ct. 971, 95 L.Ed. 1199 (1951); *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211, 215, 71 S.Ct. 259, 95 L.Ed. 219 (1951); *United States v. Yellow Cab Co.*, 332 U.S. 218, 227, 67 S.Ct. 1560, 91 L.Ed. 2020 (1947); *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1345 (1st Cir. 1975); *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547, 557 (1st Cir. 1974), *cert. denied*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975); *Battle v. Liberty Nat'l Life Ins. Co.*, 493 F.2d 39, 44 (5th Cir. 1974), *cert. denied*, 419 U.S. 1110, 95 S.Ct. 784, 42 L.Ed.2d 807 (1975);

*Credit Bureau Reports, Inc. v. Retail Credit Co.*, 358 F.Supp. 780, 787 (S.D.Tex.1971), *aff'd*, 476 F.2d 989 (5th Cir. 1973).

6. *See Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211, 215, 71 S.Ct. 259, 95 L.Ed. 219 (1951); *Knutson v. Daily Review, Inc.*, 548 F.2d 795 (9th Cir. 1976); *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547, 557 (1st Cir. 1974), *cert. denied*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975); *Battle v. Liberty Nat'l Life Ins. Co.*, 493 F.2d 39, 44 (5th Cir. 1974), *cert. denied*, 419 U.S. 1110 (1975); *cf. TV Signal Co. v. American Telephone & Telegraph Co.*, 462 F.2d 1256, 1260 (8th Cir. 1972).

mal" corporate interaction cannot constitute unreasonable restraint merely raises another issue of fact, for it remains to be seen whether the alleged agreements were "normal" interaction, whether they were reached with the purpose of restraining trade, and whether the objects of the alleged conspiracy and the means of effecting them constituted unreasonable restraints under the circumstances.[7] Plaintiff may well prove a set of facts in support of its claims that would entitle it to relief under Section 1.[8]

## ALLEGED VIOLATIONS OF SECTION 2 OF THE SHERMAN ACT

Count II of the amended complaint charges that the defendants monopolized, attempted to monopolize and conspired to monopolize the secondary market in Israeli bonds in violation of Section 2 of the Sherman Act.

■ In arguing that the complaint does not adequately allege a conspiracy to monopolize, the defendants again assert that affiliated corporations are legally incapable of conspiring with one another. For the reasons already stated, this argument, when advanced in support of a mo-

tion to dismiss a complaint without a trial, must be rejected.[9] Defendants also urge that the complaint fails to allege the specific intent to monopolize a designated section of commerce that is required to establish a Section 2 conspiracy.[10] On the contrary, the complaint clearly alleges that there existed an "agreement, understanding and concert of action among Defendants . . . to . . . [p]revent Brager and other Israeli bond dealers from doing business or to minimize their business." Concerted action to drive competitors out of business has repeatedly been held sufficient to demonstrate an intent to monopolize.[11] Moreover, plaintiff has alleged acts committed in furtherance of the alleged conspiracy, such as threats made to Brager by a co-conspirator which, if true, are evidential on the issue of intent to monopolize. Finally, plaintiff has alleged that the defendants control greater than sixty per cent of the market in Israeli bonds; this market share, if proven, could be taken as some evidence that the requisite intent to monopolize existed.[12]

■ The essential elements of an attempt to monopolize in violation of Section 2 are a specific intent to obtain a monopoly in the relevant market coupled with con-

---

7. See e.g., United States v. Columbia Steel Co., 334 U.S. 495, 527, 68 S.Ct. 1107, 92 L.Ed. 1533 (1948); Syracuse Broadcasting Corp. v. Newhouse, 319 F.2d 683, 688 n.3 (2d Cir. 1963).

8. Leumi New York asserts that, in any event, its actions are immunized from antitrust liability by the Bank Holding Company Act, 12 U.S.C. §§ 1841–50, which specifically authorizes Leumi Israel's ownership of Leumi New York. Plaintiff, however, does not attack the mere fact of corporate affiliation; rather it charges violations of the antitrust laws based upon the conduct and relationships of the defendants since the creation of Leumi New York. The Bank Holding Company Act explicitly states that its provisions shall not constitute a defense to such charges. 12 U.S.C. § 1849(a) & (b).

9. See text accompanying notes 5–6 supra.

10. See e.g., Bowen v. New York News, Inc., 522 F.2d 1242, 1258 (2d Cir. 1975), cert. denied, 425 U.S. 936, 96 S.Ct. 1667, 48 L.Ed.2d 177 (1976); Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co., 510 F.2d 1140, 1144 (2d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct.

2416, 44 L.Ed.2d 679 (1975); Lewis v. Pennington, 400 F.2d 806, 811 (6th Cir.), cert. denied, 393 U.S. 983, 89 S.Ct. 450, 21 L.Ed.2d 444 (1968); United States v. Consolidated Laundries Corp., 291 F.2d 563, 573 (2d Cir. 1961); Harlem River Consumers Cooperative, Inc. v. Associated Grocers, Inc., 408 F.Supp. 1251, 1285 (S.D.N.Y.1976).

11. See, e.g., Bowen v. New York News, Inc., 522 F.2d 1242, 1258 (2d Cir. 1975), cert. denied, 425 U.S. 936, 96 S.Ct. 1667, 48 L.Ed.2d 177 (1976) (defendants' continued dealings with competitors renders it unlikely that specific intent to monopolize exists); United States v. Consolidated Laundries Corp., 291 F.2d 563, 572–73 (2d Cir. 1961); Harlem River Consumers Cooperative, Inc. v. Associated Grocers, Inc., 408 F.Supp. 1251, 1285 (S.D.N.Y.1976).

12. See Twin City Sportservice, Inc. v. Charles O. Finley & Co., 512 F.2d 1264, 1276 (9th Cir. 1975); Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co., 510 F.2d 1140, 1144 (2d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2416, 44 L.Ed.2d 679 (1975).

duct evidencing a dangerous probability that the attempt will be successful.[13] The latter element is usually satisfied by a showing that the defendant possesses sufficient market power to render his anticompetitive conduct likely to effect the desired result.[14] As noted, plaintiff has adequately alleged the defendants' intent to monopolize. In addition, the complaint states that Leumi Securities controls in excess of sixty per cent of the secondary market in Israeli bonds, that it has the power to establish prices in that market, that it has been able to preclude Brager and its competitors from doing business with a substantial portion of the customers in the market, and that it has foreclosed entry into the market by potential competitors. These allegations charge the defendants with substantial market power, and it cannot be said that Brager could prove no set of facts in support of its claims that would demonstrate a dangerous probability of a successful attempt to monopolize. Accordingly, plaintiff's claim of attempted monopolization is sufficiently pled to withstand the motion to dismiss.

Monopolization proscribed by Section 2 consists of "the possession of monopoly power in the relevant market" plus "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." [15] Defendants contend that the complaint fails to allege adequately the first of these elements because it charges them with having captured in excess of only sixty per cent of the market for Israeli bonds. Concededly, companies that have been found to possess monopoly power usually have enjoyed market shares greater than seventy per cent,[16] but whether such power actually exists is a quintessential question of fact. The answer turns upon whether the defendant can "control prices or exclude competition," [17] and the plaintiff here alleges that the defendants have succeeded in doing just that. Plaintiff has also pleaded specific conduct on the part of the defendants calculated to acquire and maintain monopoly power. The monopolization claim is thus also sufficient to withstand the motion to dismiss.[18]

13. *Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 626, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); *Swift & Co. v. United States*, 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518 (1905); *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835, 850 (5th Cir. 1975), *cert. denied*, 424 U.S. 934, 96 S.Ct 1148, 47 L.Ed.2d 341 (1976); *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1348 (3d Cir. 1975); *United States v. Consolidated Laundries Corp.*, 291 F.2d 563, 573 (2d Cir. 1961).

14. *See Lorain Journal Co. v. United States*, 342 U.S. 143, 154, 72 S.Ct. 181, 96 L.Ed. 162 (1953); *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1348 (3d Cir. 1975); *Cornwell Quality Tools Co. v. C.T.S. Co.*, 446 F.2d 825, 830 (9th Cir.), *cert. denied*, 404 U.S. 1049, 92 S.Ct. 715, 30 L.Ed.2d 740 (1971).

15. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966); *Woods Exploration & Producing Co. v. Aluminum Co. of America*, 438 F.2d 1286, 1304 (5th Cir. 1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972).

16. *E.g., United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *International Boxing Club, Inc. v. United States*, 358 U.S. 242, 79 S.Ct. 245, 3 L.Ed.2d 270 (1959); *United States v. United Shoe Mach. Corp.*, 110 F.Supp. 295 (D.Mass.1953),

*aff'd* 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954) (per curiam). *See United States v. Aluminum Co. of America*, 148 F.2d 416, 424 (2d Cir. 1945) ("it is doubtful whether sixty or sixty-four percent would be enough" of a market share to constitute a monopoly).

17. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).

18. Leumi New York argues that it cannot be held liable for monopolization or attempted monopolization because it has not acted, and cannot legally act, as a broker-dealer in Israeli bonds. If, however, Leumi New York has conspired with the remaining defendants to monopolize the secondary market in Israeli bonds, it would, as a co-conspirator, be liable for any substantive offense committed in the course of the conspiracy. *See American Tobacco Co. v. United States*, 328 U.S. 781, 809, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); *Keco Industries, Inc. v. Borg-Warner Corp.*, 334 F.Supp. 1240, 1245 (M.D.Pa.1971). Nor is there any requirement that a party attempting to monopolize a market be dealing in that market at the time of the alleged violation; all that is required is a showing of intent and a dangerous probability of success, which can be demonstrated by evidence other than market power. *See Hallmark*

It must be emphasized that at this stage of the litigation we are dealing with a motion addressed to a pleading. The force of plaintiff's claims under Sections 1 and 2 is somewhat attenuated by the circumstance that although it alleges defendants control sixty per cent of the market, plaintiff itself controls almost all of the balance, with the result that together they have almost complete control.

## ALLEGED VIOLATIONS OF SECTION 7 OF THE CLAYTON ACT

In counts III and IV of its amended complaint, plaintiff alleges that Leumi Israel's acquisitions of Leumi Securities and Leumi New York, and Leumi New York's acquisition of American Bank and Trust Company in 1976, violated Section 7 of the Clayton Act because they tended substantially to lessen competition in the secondary market for Israeli bonds.[19]

■■■ With respect to the claim directed toward it, Leumi Israel asserts that its ownership of Leumi Securities and Leumi New York resulted from their being created as Leumi Israel's subsidiaries and not from any "acquisition" that might be subject to scrutiny under Section 7. Be this as it may, the complaint speaks in terms of Leumi Israel's "acquisition" of its subsidiaries, and for the purposes of a motion to dismiss for failure to state a claim, this allegation must be taken as true.[20] Moreover, although Section 7 is cast in terms of corporate acquisitions, its explicit language contemplates that, under some circumstances, formation of subsidiaries would also be within the coverage of the statute. Thus, the third paragraph of Section 7 states:

Nor shall anything contained in this section prevent a corporation engaged in commerce from causing the formation of subsidiary corporations for the actual carrying on of their immediate lawful business, or the natural and legitimate branches or extensions thereof, or from owning and holding all or part of the stock of such subsidiary corporations, *when the effect of such formation is not to substantially lessen competition.*[21]

In light of this language, which upon its face seemingly gives support to plaintiff's position, and in the absence of any factual record that might give guidance to the court in applying Section 7 to the present case, the motion to dismiss count III of the amended complaint must be denied, albeit without prejudice to its renewal after discovery has been conducted.

Defendant Leumi New York asserts that count IV of the amended complaint does not state a claim against it because (1) its acquisition of American Bank and Trust Company, at the time a failing bank, was approved by the Federal Depositors Insurance Corporation and the Supreme Court of New York and could not have substantially lessened competition in the Israeli bond market, and (2) plaintiff lacks standing to attack the acquisition, which could not have injured plaintiff directly.

Plaintiff's claim that the acquisition of American Bank and Trust Company violated Section 7 is based on the allegation that the acquisition gave the defendants access to large inventories of Israeli bonds and to large numbers of potential customers for such bonds. The complaint attributes Leumi Securities' ascendancy in the Israeli

---

*Industry v. Reynolds Metals Co.*, 489 F.2d 8, 12–13 (9th Cir. 1973), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974); *Jack Winter, Inc. v. Koratron Co.*, 375 F.Supp. 1, 70 (N.D.Cal.1974). Finally, the plaintiff charges that Leumi New York exerts considerable influence over a large portion of the allegedly limited class of persons willing to purchase Israeli bonds. It is asserted that the defendants' control of the bond market stems in part from this influence; thus, Leumi New York could be argued to have acquired market power in the trading market for bonds although it never directly dealt in that market. *See Southern Concrete Co. v. United States Steel Corp.*, 394 F.Supp. 362, 380 (N.D.Ga.1975), *aff'd*, 535 F.2d 313 (5th Cir. 1976); *United States v. United Shoe Mach. Corp.*, 110 F.Supp. 295, 346 (D.Mass.1953), *aff'd*, 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954).

**19.** 15 U.S.C. § 18.

**20.** *See* cases cited in note 4 *supra*.

**21.** 15 U.S.C. § 18 (emphasis added).

bond market, at least in part, to these factors. Thus, plaintiff asserts that the former customers of American Bank and Trust Company belonged to the class of potential bond purchasers and were somehow influenced by the defendants to conduct their bond transactions through Leumi Securities. Whether the acquisition, with governmental approval, of a single failing New York bank had any actual effect on competition in the Israeli bond market is upon its face doubtful, but it is unnecessary to resolve that doubt since other considerations require dismissal of this claim.

Before a plaintiff can be held to have standing to attack an alleged antitrust violation that may have injured his business, he must show that the violation directly injured him or that he was within the "target area" of the alleged illegal act.[22] It is clear from the allegations of the complaint that any injury to Brager's business of trading Israeli bonds was far too remote from the acquisition of American Bank and Trust Company to ground a claim in Brager's favor under count IV of its complaint. The parties to the acquisition were commercial banks competing in the market for banking services; they were not broker-dealers in the secondary market for Israeli bonds, nor are they alleged to have been regular or substantial purchasers of Israeli bonds. Moreover, plaintiff's claims of injury rest on a highly attenuated theory of causation. That theory assumes both that a disproportionate number of potential Israeli bond customers were depositors in American Bank and Trust Company and that such depositors were so attached to, or influenced by, their banking institution that they allowed it to determine the broker-dealer they would employ in transacting trades of bonds. Whether or no these factors can be proven, it is clear that any anticompetitive impact of the acquisition on the Israeli bond market was at best indirect, incidental and remote. Under these circumstances, plaintiff has no standing to attack the acquisition, and count IV of the amended complaint against Leumi New York must be dismissed.

## STATUTE OF LIMITATIONS

The defendants also assert that plaintiff's claims are barred by the statute of limitations or by the doctrine of laches. Neither plaintiff's alleged inexcusable delay in bringing suit nor its prejudicial impact on the defendants can be determined in the absence of any factual record; the contention with respect to laches must thus await later resolution. Plaintiff's claims under Sections 1 and 2 of the Sherman Act are predicated on a continuing conspiracy involving repeated illegal acts that may either have occurred within the state of limitations period or have caused damages to plaintiff within that period; such claims are not barred by the statute.[23] Moreover, a claim under Section 7 of the Clayton Act accrues only when the plaintiff has sustained damage attributable to the challenged acquisition, regardless of when it took place.[24] Thus, none of plaintiff's claims can be dismissed because it is barred by the statute of limitations, but plaintiff will be restricted at trial to recovering only

---

22. See *Long Island Lighting Co. v. Standard Oil Co. of Cal.,* 521 F.2d 1269, 1273–74 (2d Cir. 1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 83 (1976); *Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc.,* 454 F.2d 1292, 1295–96 (2d Cir. 1971), *cert. denied,* 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972); *Billy Baxter, Inc. v. Coca-Cola Co.,* 431 F.2d 183, 187 (2d Cir. 1970), *cert. denied,* 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971).

23. See *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338–40, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Hanover Shoe, Inc. v.*

*United Shoe Mach. Corp.,* 392 U.S. 481, 502 n.15, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968); *Poster Exchange, Inc. v. National Screen Serv. Corp.,* 517 F.2d 117, 124, 127 (5th Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976).

24. See *United States v. E. I. du Pont de Nemours & Co.,* 353 U.S. 586, 607, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957); *International Rys. v. United Brands Co.,* 405 F.Supp. 884, 899 (S.D.N.Y. 1975), *aff'd,* 532 F.2d 231 (2d Cir.), *cert. denied,* 429 U.S. 835, 97 S.Ct. 101, 50 L.Ed.2d 100 (1976).

damages occurring within four years prior to the filing of the complaint.

Accordingly, the motion to dismiss is denied except (1) count IV is dismissed in its entirety, and (2) upon plaintiff's consent count III, insofar as it seeks to state a claim against Leumi New York, is dismissed.

So ordered.