AMERICAN CAMPING ASSOCIATION, INC. and New Hampshire Camp Directors Association, Inc., Plaintiffs,

v.

Robert P. WHALEN, M.D., as Commissioner of the Department of Health of the State of New York, Irving Grossman, P.E., as Director of the Bureau of Housing & Recreation Sanitation in the Office of Public Health in the Department of Health of the State of New York, Howard B. Gates, III, P.E., as Chief of Camp & Recreation Division of the Bureau of Housing & Recreation Sanitation, Harry Carter, as Coordinator of Out-of-State Children's Camp Program of the Camp and Recreation Division of the Bureau of Housing & Recreation Sanitation, the Department of Health of the State of New York, the Office of Public Health of the Department of Health of the State of New York and Louis J. Lefkowitz, as Attorney General of the State of New York, Defendants.

No. 78 Civ. 2676.

United States District Court, S. D. New York.

Dec. 19, 1978.

Stolz, Goldfine & Stolz, by Samuel Gottlieb, Irving H. Stolz, Milton Shalleck, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., State of N. Y., by Ellen Marks, New York City, for defendants.

MEMORANDUM AND ORDER

OWEN, District Judge.

Plaintiffs American Camping Association ("ACA") and the New Hampshire Camp Directors Association, Inc. ("NHCDA") move, on constitutional grounds, for a preliminary injunction restraining enforcement of Article 14 of the New York State Public Health Law. Defendants oppose and move to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim.

Articles 13 and 14 of the Public Health Law were enacted to protect the health, safety and welfare of children attending overnight, summer day, or traveling summer day camps. Article 13, enacted in 1973, sets standards for camps within New York State and provides for systematic inspection to monitor compliance. Camps meeting these standards are issued permits and those that fail may be restrained from oper-

ating and prosecuted. The new Article 14, effective January 1, 1978,[1] regulating out-of-state camps that solicit or advertise in New York State,[2] functions as a sort of "Blue Sky Law," requiring the fullest disclosure by out-of-state camps as to their operation and facilities as a prerequisite to advertising or solicitation in New York.

Under Article 14, an out-of-state summer camp for children must annually file a detailed disclosure statement with the Department of Health as a condition of advertising within the state, and must enclose a "short form disclosure statement" in all solicitation materials and enrollment contracts sent to New York parents. In addition, an out-of-state camp that advertises in New York must designate the Attorney General as an agent for service of process.

ACA is a non-profit organization that establishes guidelines for the administration of camps and accredits those that meet ACA standards. ACA's activities also include national advertising in the print media, and publication of an annual guide of accredited camps for parents. NHCDH performs similar functions within the state of New Hampshire. Plaintiffs challenge Article 14 under the First Amendment as an unconstitutional restraint on protected commercial speech, and under the Commerce Clause as a discriminatory and undue burden on out-of-state camps.

The question to be determined at this stage in the proceeding is whether plaintiffs can satisfy the test for a preliminary injunction,[3] taking into account the additional burden of persuasion imposed on

1. The State has voluntarily stayed enforcement of Article 14 pending the determination of these motions.

2. Article 14 of the New York Public Health Law provides, in relevant part, as follows:
§ 1400. Definitions

2. "Disclosure statement" means a written statement submitted initially and/or amended annually containing such information as the commissioner by regulation may require on forms to be prescribed by the commissioner. In developing such disclosure statements, the commissioner shall require any person, firm, corporation, or association operating such camp to disclose information including but not limited to the following: (1) name and mailing address of such camp; (2) form of the business organization and principal owners, officers or directors; (3) name, address and state of incorporation, if applicable, of the owner of such camp; (4) financial stability statements; (5) the political subdivision in which such camp is located and the location of the property within that subdivision; (6) physical features of the camp including a map of the camp and such photographs as the commissioner may require; (7) provisions for sanitary and disposal facilities and water supply; (8) staffing ratios; (9) living and sleeping quarters; (10) food service facilities; (11) recreational quarters and facilities and occupancy limits; (12) insurance coverage including names and addresses of carriers; (13) emergency health services; (14) medical services; (15) results of inspections by local or state health and safety officials within the past eighteen months; and (16) any other information which the commissioner deems necessary.

3. "Short form disclosure statement" or "short form" means an abbreviated version of the disclosure statement containing such information from the disclosure statement as the commissioner may require.
§ 1401. Disclosure statement
No children's camp shall engage in any public solicitation for applications, for deposits for, or contracts for the purpose of enrollment, or advertise or cause to be advertised within the state, or otherwise solicit enrollments, or accept or make any contract of enrollment for any child residing in the state for any children's camp located without the state unless prior to such solicitation, advertisement, or acceptance of a contract or deposit for the purpose of enrollment there shall have been filed annually with the department of health a disclosure statement and a short form disclosure statement as defined in section fourteen hundred of this article. The commissioner may make provisions for amended disclosure statements.
§ 1402. Delivery of disclosure state to parent
1. Any literature, solicitation material, enrollment application forms and/or enrollment contract forms mailed or delivered to a person residing within the state for purposes of enrollment of a child residing within the state for any children's camp located without the state shall be accompanied by a copy of the short form disclosure statement.
N.Y. Pub. Health Law §§ 1400, 1401, 1402 (McKinney Supp.1977).

3. The settled rule is that a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, or (2) sufficiently serious questions going to the merits

plaintiffs "where the grant of interim relief may adversely affect the public interest in a manner which cannot be compensated for by an injunction bond . . . ." *Medical Society of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977).

There is no question today that the First Amendment extends some protection to commercial speech. Absolute bans on various forms of commercial advertising are prohibited. *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975) (an abortion clinic); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (drug prices); *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (legal services). Article 14 of the Public Health Law is not squarely within the rubric of these cases, for it is not an absolute bar to advertising in New York by out-of-state camps, but instead is a surmountable barrier, imposing disclosure requirements upon such camps before advertising may be undertaken within the state. The Supreme Court has thus far, however, identified only three categories of permissible regulation, none of which is applicable here: time, place, and manner restrictions, prohibitions of false and misleading advertisements, and prohibitions against advertisements of illegal transactions; *Virginia State Board of Pharmacy, supra*, 425 U.S. at 771–72, 96 S.Ct. 1817; *Bates, supra*, 433 U.S. at 383–84, 97 S.Ct. 2691. Indeed, *Bigelow, supra*, 421 U.S. at 824–25, 95 S.Ct. 2222, makes it clear that any state regulation that prevents the truthful dissemination of information about an activity lawful in another state is impermissible.

It is therefore beyond question that the First Amendment allegations state a claim. See *Brager & Co., Inc. v. Leumi Securities Corp.*, 429 F.Supp. 1341, 1344 (S.D.N.Y. 1977). Although a trial would be required to determine whether, as a factual matter, the requirements of Article 14 are so bur-

to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

densome as to amount to a ban on advertising, there is no question that this is a sufficiently serious question to be a fair ground for litigation. Therefore, a preliminary injunction must issue if the balance of hardships, which will be discussed below in connection with the Commerce Clause issue, tips decidedly in favor of the plaintiffs. See note 3 *supra.*

With respect to the Commerce Clause, plaintiffs contend that Article 14 impermissibly places out-of-state camps at a competitive disadvantage. Defendants do not attack the sufficiency of the complaint on this issue, but assert that Article 14 furthers a significant state interest in helping parents make intelligent choices about summer camps for their children, while imposing only a minimal burden on out-of-state camps.

The constitutionality of a law that burdens interstate commerce is determined by a balancing test:

"Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 443, 80 S.Ct. 813, 4 L.Ed.2d 852. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

*Great Atlantic & Pacific Tea Co. v. Cottrell*, 424 U.S. 366, 371–72, 96 S.Ct. 923, 928, 47 L.Ed.2d 55 (1976). A state may not erect "an economic barrier protecting a major

*Sonesta Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973).

local industry against competition from without the State . . . even in the exercise of its unquestioned power to protect the health and safety of its people, if reasonable nondiscriminatory alternatives, adequate to conserve legitimate local interests, are available." *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354, 71 S.Ct. 295, 298, 95 L.Ed. 329 (1951).

The filing and disclosure requirements of Article 14 do appear to have a substantial discriminatory impact on out-of-state camps. The burdens on interstate commerce are two-fold. First, Article 14 requires out-of-state camps to expend considerable time and expense that New York camps are spared. Out-of-state camps must independently conduct annual, in-depth inspections, in order to fill out the long-form disclosure statement, while New York's Department of Health performs this task for in-state camps. In addition, out-of-state camps must absorb the substantial cost of filling out, printing, and continuously distributing the short-form disclosure statement. I observe that much of the advertising material currently in use by an average camp would have to be completely revised and greatly expanded to comply with Article 14. Second, the short-form disclosure requirement mandates that out-of-state camps advertise essentially in the form the statute decrees, and makes it impossible to present the glossy advertising image allowed to New York camps, placing the out-of-staters at a competitive disadvantage.

The issue is whether these burdens on interstate commerce are necessary to further legitimate state ends. Article 14 can be viewed as serving two state interests: first, providing New York parents with detailed information about summer camps (whether in or out-of-state) that solicit and advertise in New York so that the camps can be compared; second, ensuring that parents are informed about out-of-state camps since they cannot otherwise be assured these camps meet the minimum health and safety standards that New York camps must satisfy. Neither of these goals is satisfied by this legislation. To make "comparison shopping" possible, the requirement of disclosure to parents would have to extend to *both* in and out-of-state camps. However, as the Public Health Law now reads, parents will receive information only from out-of-state camps.[4] With respect to the second goal, the legislation fails completely, since parents are not informed of what New York State's minimum standards are or whether an out-of-state camp meets them.[5]

I conclude, therefore, that plaintiffs have demonstrated probable success on the merits of their Commerce Clause claim; moreover, plaintiffs will suffer irreparable injury if enforcement of these provisions is not enjoined. The obviously substantial costs of preparing and disseminating entirely new solicitation and advertising materials by hundreds of camps can never be recovered. Lost profits occasioned by the unfair competitive advantage granted to New York camps can never be determined. By contrast, there is minimal evidence of injury to the public from delayed enforcement of Article 14 since the statute fails in many respects to address the legitimate state interests it was designed to promote; thus the balance of hardships tips decidedly toward the plaintiffs.

Although the Court is sympathetic to the concerns that prompted enactment of Article 14, the state is preliminarily enjoined, on both First Amendment and Commerce Clause grounds, from enforcing it. A prompt trial on the merits is required. To schedule this, the parties are directed to appear before me on January 5, 1979, at 10:00 a. m. for a conference.

The foregoing is So Ordered.

**4.** The Blue Sky Laws to which defendants compare Article 14 apply equally to in and out-of-state solicitors and advertisers. See N.Y. Gen. Bus. Law § 352–e (McKinney Supp.1977); N.Y. Real Prop. Law §§ 337, 337–a (McKinney 1968).

**5.** Thus, under Article 14, a sub-standard out-of-state camp, by making disclosure, may advertise and solicit in New York without the parents being aware that it does not meet New York standards.