**BULKFERTS INC. and Mahmud-Ahmed Sipra, Plaintiffs,**

v.

**SALATIN INCORPORATED, A New Jersey Corporation; Asif M. Sultan; Franco Ferri Inc., A New Jersey Corporation; Andrea Ferri, and Arnaldo Ferri, Defendants.**

No. 82 Civ. 5081(RLC).

United States District Court, S.D. New York.

March 11, 1983.

was the lowest bidder and thus received the contract. Defendant, Salatin, claims to have been the second lowest bidder, and furthermore, asserts that were it not for unlawful actions on the part of Bulkferts,[1] it would have received the contract. Defendants' Memorandum in Support of its Motion at 4. Making essentially those allegations, they filed suit against Bulkferts in the United States District Court for the District of New Jersey. The action was dismissed for lack of personal jurisdiction. Plaintiffs' Memorandum in Opposition to the Motion at 10.

Shortly thereafter, the defendants brought an action in the New York Supreme Court for injunctive relief against Bulkferts. They sought an order requiring Bulkferts to pay over the profits from its contract with the government of Pakistan. The motion for a preliminary injunction was denied; however, they did obtain an *ex parte* temporary restraining order prohibiting Bulkferts and the other defendants in the case from drawing down the final $937,500 of a letter of credit taken out by the government of Pakistan for payment of the contract. *Id.* at 11.

The crux of plaintiff's allegations are that once Salatin realized that Bulkferts would be awarded the fertilizer supply contract, Salatin embarked upon a campaign to interfere with Bulkferts' contract with the government of Pakistan and to drive it out of business. *Id.* at 9. Plaintiff asserts, specifically, that the defendants, in particular Salatin and Ferri, entered into a conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1973) to restrain the plaintiff from entering the international fertilizer trade and commerce, and to monopolize the trade in fertilizer. *Id.* at 3. They also claim that the actions which defendants supposedly took to influence the government of Pakistan with respect to plaintiff's fertilizer supply contract, and

Kramer, Levin, Nessen, Kamin & Soll, New York City, for plaintiffs; William D. Rogers, New York City, Patrick F.J. Macrory, Scott H. Lang, Robert H. Klonoff, Washington, D.C., Geoffrey M. Kalmus, New York City, of counsel.

Moss & Kalish, New York City, for defendants Salatin, Inc. and Asif M. Sultan; Mark L. Kalish, New York City, of counsel.

Kensington, Sterba, Ressler & Taub, New York City, for defendants Franco Ferri, Inc., Andrea Ferri and Arnaldo Ferri; Raymond C. James, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

In January 1982, the government of Pakistan announced the opening of bids on a fertilizer supply contract. Defendants' Memorandum in Support of its Motion at 2. The plaintiff, Bulkferts, Inc. ("Bulkferts")

---

1. Defendants allege that as a result of improper influence brought to bear upon the Pakistani government by Bulkferts, an essential element, the requirement of a manufacturers' certificate was eliminated for those submitting bids on the fertilizer contract in question. Defendants further contend that without the elimination of this requirement, Bulkferts would not have been able to qualify for the contract. Defendants' Memorandum in Support of its Motion at 4.

the lawsuits filed by Salatin against Bulkferts were intended to interfere with Bulkferts' business and thus violated the antitrust laws.

Defendants have moved to dismiss the first, second and third counts of the plaintiff's complaint pursuant to Rule 12(b)(6), F.R.Civ.P., or in the alternative for summary judgment under Rule 56.[2] Both sides have submitted affidavits and other materials in support of their positions; however, neither has submitted the statement of facts required of motions for summary judgment under Local Rule 3(g).[3]

Defendants seek summary judgment on the conspiracy count on the grounds that Salatin and Franco Ferri, Inc. ("Ferri") could not enter into a conspiracy within the meaning of the Sherman Act, because the latter was not an "independent business entity," and because Ferri was allegedly Salatin's agent. Defendants' Memorandum in Support of their Motion at 10; Affidavit of Asif Sultan ¶ 34. Plaintiff hotly contests these assertions. Affidavit of Patrick F.J. Macrory ¶ 2.

It is undisputed that in order to prove a conspiracy under the Sherman Act, there must be a "plurality of actors" and they must constitute "distinct economic entities." *Fuchs Sugar & Syrups v. Amstar Corp.*, 602 F.2d 1025, 1031 n. 5 (2d Cir. 1979), *cert. denied*, 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979). Proof of the independence of the actors requires an analysis of the "economic realities of their relationship." *Id.; see generally, Brager v. Leumi Securities*, 429 F.Supp. 1341,

1345 (S.D.N.Y.1977) (Weinfeld, J.), *aff'd*, 646 F.2d 559 (1980), *cert. denied*, 451 U.S. 987, 101 S.Ct. 2322, 68 L.Ed.2d 845 (1981); *Las Vegas Sun Inc. v. Summa, Inc.*, 610 F.2d 614, 617 (9th Cir.1979), *cert. denied*, 447 U.S. 906, 100 S.Ct. 2988, 64 L.Ed.2d 855 (1980); *Hunt-Wesson Foods v. Ragu Foods*, 627 F.2d 919, 927 n. 5 (9th Cir.1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981); *DuPont Glore Forgan, Inc. v. AT & T*, 437 F.Supp. 1104, 1111 (S.D.N.Y.1977) (Weinfeld, J.); *aff'd*, 578 F.2d 1367, *cert. denied*, 439 U.S. 970, 99 S.Ct. 465, 58 L.Ed.2d 431 (1978); *Morse v. Swank*, 459 F.Supp. 660, 666 (S.D.N.Y. 1978) (Tenney, J.).

■ Furthermore, a principal and his agent may conspire within the meaning of the Sherman Act; however, this requires scrutiny of a number of elements, including what other, if any, activities the agent performs on behalf of his principal, and the degree to which the agent is authorized to exercise his discretion with respect to the transaction in question. *Fuchs, supra*, 602 F.2d at 1031 n. 5. Aside from the failure to comply with our local rules, these are factual questions which cannot be addressed on a motion for summary judgment.

■ Defendants' efforts to dispose of the plaintiff's allegations concerning the existence of a monopoly in restraint of trade fail similarly. To prove an attempt to monopolize, one must show an intent to obtain a monopoly in the market in ques-

---

**2.** Defendants have also moved to dismiss the plaintiffs' state based claims alleging tortious interference with contractual relations and abuse of process. The claims are based on pendant jurisdiction. However, since, with the exception, noted *infra*, I have not dismissed nor granted summary judgment on the federal claims, thus I will not dismiss the state based claims.

**3.** Local Rule 3(g) for the United States District Court for the Southern District of New York provides:

Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise

statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion.

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

tion, and conduct evidencing a probability that the attempt will be successful. *Brager, supra*, 429 F.Supp. at 1346. Neither issue is appropriate for summary judgment.

■ Finally, defendants seek refuge in the "Noerr-Pennington doctrine" for their actions allegedly to influence the government of Pakistan and for the litigation filed against Bulkferts. In an earlier case, the development and origins of the doctrine were discussed at some length. *Reaemco, Inc. v. Allegheny Airlines, supra*, 496 F.Supp. 546, 555–57 (S.D.N.Y.1980) (Carter, J.). Put simply, it states that joint efforts to influence legislative, executive or judicial bodies do not violate the anti-trust laws even though intended to eliminate competition, unless the campaign is a mere sham. *See, id.* at 555, *citing, Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135–36, 81 S.Ct. 523, 528–29, 530–31, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 670, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1965).

In essence, the Supreme Court held that activities which are within the penumbra of First Amendment rights will not be proscribed even where the sole purpose for undertaking them is anti-competitive. *Reaemco, supra*, 496 F.Supp. at 556. An exception lies where the actions are merely a "pattern of baseless, repetitive claims" against the plaintiff which are not undertaken to influence official behavior. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513, 92 S.Ct. 609, 613, 30 L.Ed.2d 642 (1972); *Reaemco, supra*, 496 F.Supp. at 556; *First American Title Co. v. South Dakota Land Title Association*, 541 F.Supp. 1147, 1158–59 (D.S.D.1982); *see also, Franchise Realty Inter-*

*state Corp. v. San Francisco Local Joint Executive Board of Culinary Workers*, 542 F.2d 1076, 1081 (9th Cir.1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1976).

It is questionable, however, whether the doctrine applies to activities influencing foreign governments such as those herein alleged. *See, Dominicus Americana Bohio v. Gulf & Western*, 473 F.Supp. 680, 690 n. 3 (S.D.N.Y.1979) (Carter, J.); *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*, 331 F.Supp. 92, 107–08 (C.D.Cal. 1971), *aff'd*, 461 F.2d 1261 (9th Cir.1972), *cert. denied*, 409 U.S. 950, 93 S.Ct. 272, 34 L.Ed.2d 221 (1972). Nonetheless, it is unnecessary to dwell on that issue, since the application of *Noerr-Pennington* to the actions filed by defendants against Bulkferts and defendants' alleged efforts to influence the Pakistani government, turn on an ascertainment of the defendants' intent, and hence may not be addressed on a motion for summary judgment. *First American Title Co., supra*, 541 F.Supp. at 1159; *Federal Prescription Service v. American Pharmaceutical Ass'n*, 663 F.2d 253, 262 (D.C.Cir.1981), *cert. denied*, 455 U.S. 928, 102 S.Ct. 1293, 71 L.Ed.2d 472 (1982).

■ However, counts two and three, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (Supp. 1982), must be dismissed inasmuch as the plaintiff does not allege that the defendants were engaged in a pattern of racketeering activity related to "obtaining an interest in an enterprise or operating an enterprise." Under section 1962(b) and the relevant case law, it is necessary to show the above in order to come within the purview of the statute.[4] *See Moss v. Morgan*

---

4. In order to establish a violation of RICO, the plaintiff must show: (1) a pattern of racketeering activity—defined as the commission of at least two predicate offenses within a ten year period. 18 U.S.C. 1961(5), (2) the pattern of racketeering activity must be related to obtaining an interest in an enterprise or operating an enterprise, *Erlbaum, supra*, ¶ 98,772 at 93,921, (3) the enterprise must be separate and distinct from the pattern of racketeering activity, *U.S. v.*

*Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). But there must be a nexus between the pattern of racketeering activity and the enterprise. *Moss, supra*, at 1363, (4) the injury must be by reason of the racketeering enterprise, that is there must be an allegation that the injury was caused by the illegitimate advantage derived by the defendant in operating or investing in the enterprise through racketeering activity, *Erlbaum, supra*, ¶ 98,772 at 93,922.

**10**

*Stanley,* 553 F.Supp. 1347, at 1361–62 (S.D. N.Y.1983) (Pollack, J.); *Erlbaum v. Erlbaum,* [1982 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 98,772 at 93,921 (E.D.Pa. July 13, 1982); *Spencer, Inc. v. Agency Rent-A-Car, Inc.,* [1981 Transfer Binder] (CCH) Fed.Sec.L.Rep. ¶ 98,361 at 92,215–16 (D.Mass. Nov. 17, 1981). Accordingly, counts two and three of the complaint pleading violations of RICO, are dismissed, and summary judgment is denied as to count one.

IT IS SO ORDERED.

Plaintiff has also properly alleged injury to business and property as is required for recovery under the anti-trust laws. Plaintiffs' Complaint, ¶ 20; *Reaemco, supra,* 496 F.Supp. at 546, 553.