The GENERAL ELECTRIC COMPANY, p.l.c., The English Electric Company Limited, and Ruston & Hornsby Limited, individually and on behalf of Ruston-Bucyrus Limited, Plaintiffs,

v.

BUCYRUS–ERIE COMPANY and Ruston-Bucyrus Limited, Defendants.

No. 81 Civ. 6360 (CES).

United States District Court, S.D. New York.

Jan. 28, 1983.

See also 550 F.Supp. 1037.

Cravath, Swaine & Moore, New York City, for plaintiffs; David Boies, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendants; William E. Jackson, New York City, of counsel.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiffs in this action are corporations organized under the laws of the United Kingdom. Ruston & Hornsby Limited ("Hornsby") was acquired by the English Electric Company in 1966, and English Electric, in turn, was acquired by General Electric in 1968. Collectively they will be referred to as "GEC."

GEC is the minority shareholder of defendant Ruston-Bucyrus ("Ruston"), likewise a British corporation. GEC brings this action both individually and derivatively for alleged wrongs which it contends violate both the antitrust laws of the United States and also certain fiduciary duties owed GEC by defendant Bucyrus-Erie ("Bucyrus"), the majority shareholder in Ruston.

Before us is a motion by Bucyrus to dismiss the action on the grounds that:

1. GEC lacks standing as a shareholder, or otherwise, to individually assert the antitrust claims and, for various reasons, may not assert these claims derivatively;

2. The Amended Complaint is defectively pleaded and fails to state a cause of action under the antitrust laws;

3. Since GEC may not bring its antitrust claims, the court lacks subject matter jurisdiction to hear GEC's "pendent" claim for breach of fiduciary duty under English law. Alternatively, if there is a separate basis for jurisdiction over the English law claim, it should be dismissed pursuant to the forum non conveniens doctrine.

*GEC's Standing to Bring Its Claims Individually and Derivatively*

Bucyrus asserts that GEC may not bring its antitrust claims either individually, or derivatively on behalf of Ruston. The first argument Bucyrus makes to this effect is circular and seeks to characterize the relevant law as yielding a "heads I win, tails you lose" result for defendants in derivative actions. Bucyrus contends that "[t]he heart of [GEC's] complaint[ ]—and the only claim of direct injury—is the claim of breach of fiduciary duty." Bucyrus wishes us to conclude, therefore, "that this is purely an individual action by GEC on its own behalf, and not a derivative action."[1] Bucyrus next goes on to correctly point out "that a stockholder lacks standing under the antitrust laws" to bring an antitrust action *individually* for harm done to his or her corporation. *E.g., Kreager v. General Electric Co.,* 497 F.2d 468, 472 (2d Cir.1974), cert. *denied,* 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974). Such actions may only be brought derivatively, which leads back to Bucyrus' original assertion that GEC's antitrust claims are not really derivative since they do not involve "direct injury" to GEC.

The fallacy of this argument hinges on Bucyrus' suggestion that GEC's derivative antitrust claims should not be entertained because they do not involve direct injury to GEC. The right to sue derivatively is an attribute of corporate ownership which, to be exercised, *requires* that the injury alleged be indirect as far as shareholders are concerned, and direct only insofar as the corporation is concerned. *See Brooks v. Weiser,* 57 F.R.D. 491, 494 (S.D.N.Y.1972). Put simply, the whole purpose of Fed.R.Civ.P. 23.1, the provision which authorizes derivative actions in the federal courts, is to allow shareholders "to enforce rights which are *derivative* (secondary) in nature." 3B J. Moore, *Moore's Federal Practice* ¶ 23.1.16[1] (1976) (emphasis in original). Therefore, we can hardly hold it against GEC that its derivative antitrust

---

1. Bucyrus also labels GEC's ostensibly derivative claims as "an effort to disguise an individual claim as a derivative claim," Memorandum in Support of Defendant's Motion at 21, and "a sham." *Id.* at 4.

claims assert direct injuries to Ruston but not to GEC.

■ We are also unpersuaded that GEC's derivative standing is undermined by its prayer for money damages for itself and not for Ruston. Usually, damages won in a derivative suit do accrue to the corporation on whose behalf the action was brought. *See e.g., Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). However, failure to pray for the proper relief is not fatal to the validity of a complaint, since the court, if judgment is entered, is capable of fashioning the correct relief. *See Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959); *New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20, 24–25 (4th Cir.1963), *cert. denied,* 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964). Further, although we need not decide now whether such an approach would make sense in our case, there is ample precedent for distributing damages won in a derivative suit directly to deserving shareholders. *E.g., Perlman v. Feldmann,* 219 F.2d 173, 178 (2d Cir. 1955). *See generally, Gordon v. Fundamental Investors, Inc.,* 362 F.Supp. 41, 45–46 (S.D.N.Y.1973); Note, "Individual Pro Rata Recovery in Stockholders' Derivative Suits," 69 *Harv.L.Rev.,* 1314 (1956). Finally, we note that GEC has prayed for "such other and further relief as may be just and proper." Obviously this prayer would be consistent with our ordering damages paid to Ruston directly, should that appear appropriate.

■ Bucyrus also urges that GEC may not bring this action derivatively because it has not complied with certain formal requirements of Rule 23.1. First, Bucyrus terms inadequate GEC's "allegations [in the Amended Complaint] relating to the absence of a demand on Ruston's Board." In specific, Bucyrus asserts that

> the allegations amount to nothing more than an admission that no request has been made of Ruston's directors that they cause Ruston to institute a suit such as this, and an accusation that Ruston's board of directors would not take action

in the corporation's best interest if requested to do so.

Rule 23.1 does not require a demand be made. Rather, it requires the complaint set out *either* "the efforts, if any, made by the plaintiff to obtain the action he desires from the directors" *or* "the reasons . . . for not making the effort." Further, it is settled law that "where the directors and controlling shareholders are antagonistic, adversely interested, or involved in the transaction attacked, a demand on them is presumptively futile and need not be made." *Cathedral Estates v. Taft Realty Corp.,* 228 F.2d 85, 88 (2d Cir.1955). *See also, Galef v. Alexander,* 615 F.2d 51 (2d Cir.1980). Since we find that the Amended Complaint alleges facts with sufficient particularity to show that demand in this case would be futile, we need not decide whether it adequately alleges that a demand has been made. There is no noncompliance problem with Rule 23.1 on this score.

■ Bucyrus also complains that GEC has failed to comply with the spirit of Rule 23.1's requirement that the complaint be verified by making key allegations in its Amended Complaint "on information and belief." By not swearing that its allegations are "true", Bucyrus maintains, GEC is defying the purpose of Rule 23.1 verification "to discourage the making of unfounded allegations for their settlement value."

Bucyrus cites no cases for the proposition that allegations sworn to on information and belief violate Rule 23.1. We conclude that such pleading is satisfactory under the rule if (1) the allegations in the complaint are plausible (2) it does not appear that the action is being brought to harm the corporation, and (3) there is an adequate justification for pleading on information and belief. *See Brand v. Tisch,* 253 F.Supp. 122, 124 (S.D.N.Y.1966). *See also Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (verification of complaint by shareholder who did not fully understand its allegations but in good faith relied on advice of counsel who "advised her that the statements in the complaint were

true or to the best of his knowledge he believed them to be true," was satisfactory); *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975) (a lenient approach to allegations made on information and belief is acceptable where opposing party has superior access to underlying facts); *Hirshfield v. Briskin,* 447 F.2d 694 (7th Cir.1971) (where supplemental affidavit was offered to verify a complaint, defendants were not entitled to know which statements in the affidavit the affiant alleged as true and which he alleged on information and belief).

Our three prong test is met here. First, the allegations of the complaint are plausible. The complaint asserts as true that both Bucyrus and Ruston are international suppliers of mining, construction and drilling equipment, and that for the last fifteen years Bucyrus has controlled Ruston. It is but a small, believable step to GEC's allegation on information and belief that Bucyrus has used its control of Ruston to curtail Ruston's competition with Bucyrus. Since Bucyrus is only a part owner of Ruston, it obviously obtains a larger share of profits earned from its own sales than from Ruston's. Thus, there would be a motive to curtail Ruston's sales in markets in which Bucyrus also sells.

There is no indication that GEC is bringing the action to harm Ruston, especially since GEC has a sizable investment (just under fifty percent ownership) in Ruston. The second prong of the test is therefore also met.

Finally, we find adequate GEC's explanation for the need to plead certain allegations on information and belief. Proof of illegal conspiracy is ordinarily not readily available in public documents, or admitted at directors' meetings where adverse interests are also represented. Discovery may well be needed to unearth it. Even at the trial stage, proof of conspiracy often requires the drawing of inferences. We do not think it unreasonable that allegations in a complaint would rest upon them.

The last objection Bucyrus makes to GEC's standing to bring its derivative claims is that there is no personal jurisdiction over Ruston and that Ruston is an indispensable party. We have already decided in an earlier decision that there is jurisdiction over Ruston thus dispensing of this claim.

In sum, we conclude that there are no formal impediments to GEC's bringing its antitrust claims derivatively, and, since GEC also makes a separate claim in its own right, there is nothing faulty in the Amended Complaint's assertion of claims "individually and on behalf of Ruston."

*GEC's Claim under Section One of the Sherman Act*

■ Bucyrus challenges as insufficient GEC's claim under section one of the Sherman Act, 15 U.S.C. § 1 (1976), on essentially two grounds. The first is that, quoting *Marcus v. Ford Motor Co.,* 1976–1 Trade Cas. ¶ 60,739 at 68,173 (S.D.N.Y. January 30, 1976), "plaintiffs have merely attempted to plead the words of the statute without supplying any factual underpinning for the claim." Our examination of the Amended Complaint reveals that GEC has done significantly more than plead the words of the statute. Without rehashing the allegations, we note that GEC has identified the co-conspirators,[2] and described the nature and effects of the alleged conspiracy. *See* Amended Complaint, ¶¶ 17–21. We deem this sufficient. *See generally Archie v. Chicago Truck Drivers, Helpers and Warehouse Workers Union,* 585 F.2d 210, 217 (7th Cir. 1978); *Oleck v. Fischer,* 401 F.Supp. 651 (S.D.N.Y.1975).

Bucyrus also seeks to have the section one cause of action dismissed on the ground that it fails to state a valid claim. A motion to dismiss a claim as legally insufficient will not be granted unless "the plain-

---

2. Contrary to Bucyrus' suggestion that the co-conspirators are not identified, we find that a conspiracy between Bucyrus and Ruston is made out. *See particularly* ¶ 19 of the Amended Complaint, "... Bucyrus and the Named Directors [of Ruston] have agreed among themselves and have required Ruston to agree with Bucyrus...."

tiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Bucyrus argues, in effect, that this standard is met because there can be no proof of conspiracy which is consistent with the allegations in the Amended Complaint. Bucyrus asserts that since the alleged conspiracy is entirely between Bucyrus employees, albeit some wearing the hat of Ruston directors, and because Bucyrus is alleged to control Ruston, no conspiracy could have occurred because any agreement was internal to one entity, not between two separate entities.

Bucyrus is correct that if a complaint alleges no more than that a corporation conspired with its own employees, *see Person v. New York Post Corp.,* 427 F.Supp. 1297, 1307 (E.D.N.Y.1977), *aff'd mem.,* 573 F.2d 1294 (2d Cir.1977), or if no other interpretation of the facts is possible except that a controlled subsidiary, with whom a parent was alleged to have conspired, was created to be and never acted other than as agent for the parent, *see Sulmeyer v. Seven-Up Co.,* 411 F.Supp. 635 (S.D.N.Y.1976), no valid conspiracy claim is stated because separate entities do not exist to conspire.

 It is well established, however, that "common ownership and control does not liberate corporations from the impact of [section one of] the antitrust laws." *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons,* 340 U.S. 211, 215, 71 S.Ct. 259, 261, 95 L.Ed. 219 (1951). *Accord Timken Roller Bearing Co. v. United States,* 341 U.S. 593, 598, 71 S.Ct. 971, 974–75, 95 L.Ed. 1199 (1951). The question of whether two related corporations can be considered sufficiently distinct to be able to conspire together depends on the facts of the case. *Knutson v. Daily Review, Inc.,* 548 F.2d 795, 802 (9th Cir.1976), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2977, 53 L.Ed.2d 1094 (1977); *Brager & Co. v. Leumi Securities Corp.,* 429 F.Supp. 1341 (S.D.N.Y.1977), *aff'd,* 646 F.2d

559 (2d Cir.1980), *cert. denied,* 451 U.S. 987, 101 S.Ct. 2322, 68 L.Ed.2d 845 (1981). In this case, a determination that Ruston and Bucyrus were capable of conspiring could rest on a finding that they held themselves out as competitors, *see Kiefer-Stewart Co. v. Joseph E. Seagram & Sons,* 340 U.S. 211, 215, 71 S.Ct. 259, 261, 95 L.Ed. 219 (1951); *Brager & Co. v. Leumi Securities Corp., supra,* or that they are "operationally two separate organizations," *Battle v. Liberty National Life Insurance Co.,* 493 F.2d 39, 44 (5th Cir.1974), *cert. denied,* 419 U.S. 1110, 95 S.Ct. 784, 42 L.Ed.2d 807 (1975), notwithstanding Bucyrus' alleged "control" of Ruston.[3] As proof of such facts would be entirely consistent with the allegations in the Amended Complaint, we cannot say "beyond doubt that plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Since a "determination of these factual matters cannot be made upon a motion to dismiss but must await a hearing on the merits," *Brager & Co. v. Leumi Securities Corp.,* 429 F.Supp. 1341, 1345 (S.D.N.Y.1977), *aff'd,* 646 F.2d 559 (2d Cir.1980), *cert. denied,* 451 U.S. 987, 101 S.Ct. 2322, 68 L.Ed.2d 845 (1981), we deny Bucyrus' motion to dismiss GEC's section one claim.

*GEC's Claim under Section Two of the Sherman Act*

 As a second cause of action GEC alleges that defendants have violated section two of the Sherman Act, 15 U.S.C. § 2 (1976). Bucyrus argues this claim is defectively pleaded in that it merely parrots the relevant statutory language and fails to adequately set forth certain elements of a section two cause of action. Our discussion of GEC's section seven claim, set out below, outlines the prevailing approach to antitrust pleading and shows why Bucyrus' argument, there and here, that the pleadings are too conclusory is not substantial. As for Bucyrus' argument that the Amended

---

**3.** The fact that the same people may have represented both companies in reaching the decision to take the allegedly unlawful action does not automatically defeat a finding of conspiracy. *See America's Best Cinema Corp. v. Fort Wayne Newspapers, Inc.,* 347 F.Supp. 328, 331–32 (N.D.Ind.1972).

Complaint fails to allege the "elements" of a section two claim, the section seven discussion also shows that GEC has adequately identified "the relevant product and geographic market" allegedly affected. "Specific intent" is clearly pleaded insofar as GEC alleges that Bucyrus has "used its control," and has "agreed ... and ... required Ruston to agree"—concepts connoting volition or intent—to restrict competition. *See, e.g.,* Amended Complaint ¶¶ 17–19. Bucyrus also contends that GEC must, as an element of its section two "attempting to monopolize" claim, plead "facts showing that the defendant has sufficient market power ... to make its monopolization of that market a dangerous probability." We think this argument misconstrues the law. The complaint must allege a foundation for and be consistent with such a factual showing, but it asks too much at this early stage of litigation to require the complaint to make the factual showing. Facts showing a dangerous probability of monopolization would have to be alleged to stave off a summary judgment motion alleging contrary facts, *e.g., Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,* 614 F.2d 832, 839–40 (2d Cir.1980), and will have to be proved at trial, *e.g., FLM Collision Parts, Inc. v. Ford Motor Co.,* 543 F.2d 1019, 1030 (2d Cir.1976), *cert. denied,* 429 U.S. 1097, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977), but these are different matters. In short, the requirement that there be a showing of a dangerous probability of monopolization "is a matter of proof," *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 178, 86 S.Ct. 347, 351, 15 L.Ed.2d 247 (1965), not pleading. We find that there is a sufficient factual underpinning alleged in paragraphs 3–27 of the Amended Complaint for GEC simply to assert, in furtherance of its section two claim, that defendants "did attempt to monopolize in violation of section 2 of the Sherman Act." Amended Complaint, ¶ 29.

■ We are not convinced that pleading "overt acts" is a requirement under section two. However, the Amended Complaint adequately alleges why and how it is that GEC believes an attempt at monopolization has occurred to pass this test.

*GEC's Claim under Section Seven of the Clayton Act*

As with GEC's section one and section two claims, Bucyrus asserts that GEC's section seven[4] claim, does no more than parrot the statute and is defectively "vague" and "conclusory." In particular, Bucyrus contends, the Amended Complaint does not sufficiently identify what "line of commerce" is in danger of being monopolized as is required by section seven. We also reject this objection.

■ We begin by noting, as a general proposition, that the courts have veered away from their past demands

> for more elaborate pleadings in antitrust cases and have repudiated earlier decisions to the contrary. As far as most federal courts are concerned, it is now reasonably clear that the standard in Rule 8(a) calling for a short and plain statement of the claim for relief is to be applied in the "big case" in the same fashion as it is in any other action.

5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1228 at 167 (1969). *Accord George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 554 (2d Cir.1977). All that is required is that the claim for relief give notice to the opposing side. Liberal discovery rules allow "whatever additional sharpening of the issues may be necessary." *Id.*

■ In light of the foregoing, Bucyrus' objection that the Amended Complaint merely alleges restriction of "competition in mining, construction and drilling equipment" without stating that the restriction affected the "manufacture and sale" of products in these industries, is not substantial. Further, the Amended Complaint puts the defendants on notice, if read in its entirety, that the manufacture and sale of

4. 15 U.S.C. § 18 (1976).

equipment are implicated. Paragraphs 15 and 16 of the Amended Complaint, which are realleged as part of the section seven claim, state that the two conspiring corporations are "suppliers" of mining, construction and drilling equipment. The usual definition of a supplier comprehends one who manufactures, or furnishes products. *See, e.g., Webster's Third International Dictionary* (unabridged ed. 1971). The obvious intention of the Amended Complaint is to assert that Ruston and Bucyrus conspired to restrict competition in their businesses as suppliers of mining, construction and drilling equipment. In addition, paragraphs 17–19 and 21 of the Amended Complaint, also realleged as part of the section seven claim, explicitly assert that the wrongdoing restricted the marketing and product development of Ruston's mining, construction and drilling equipment products. To "market" *is* to sell, *see id.,* and the allegation that the product development of Ruston's equipment has also been affected serves to further specify the nature of the alleged line of commerce injury. In sum, we conclude that the Amended Complaint adequately apprises the defendants as to what line of commerce it is claimed has been injured by anticompetitive acts in violation of section seven. We are also untroubled by the failure of the Amended Complaint to be more specific as to the geographical area affected by the defendants' alleged anticompetitive activity. Since Ruston products are exported to the United States, it is proper to allege that the United States is the "section of the country" affected. *See generally Brown Shoe Co. v. United States*, 370 U.S. 294, 328, 82 S.Ct. 1502, 1525, 8 L.Ed.2d 510 (1962); *Allis-Chalmers Manufacturing Co. v. White Consolidated Industries, Inc.*, 414 F.2d 506, 517 (3d Cir.1969), *cert. denied,* 396 U.S. 1009, 90 S.Ct. 567, 24 L.Ed.2d 501 (1970).

Bucyrus' final assertion that GEC's section seven claim is deficient is that GEC is barred from bringing this claim by reason of its own participation in the transaction on which its section seven claim is based. Briefly, prior to 1966 Ruston was owned in equal shares by Bucyrus and plaintiff Hornsby. Shortly after Hornsby was acquired by plaintiff English Electric Company in November 1966, Bucyrus exercised an option, which had previously been granted to it by Hornsby, to acquire two of Hornsby's shares in Ruston. This option apparently had been granted to assure that the management of Ruston could not become deadlocked in the event of a takeover of Hornsby by a third party. The option became exercisable upon such a takeover. It is the exercise of the option, or the anticompetitive effects which resulted from the option's exercise,[5] that GEC now challenges under section seven. Bucyrus urges that since Hornsby granted the option which became exercisable as a direct result of English Electric's decision to acquire Hornsby, and since General Electric purchased English Electric "even though that option had been exercised," GEC should be estopped from asserting a claim based on the exercise of the option.

This argument might convince us to dismiss the section seven claim but for the fact that GEC counters it by contending "GEC had no way of knowing that Bucyrus would exercise its control in the anticompetitive way that it did." In making this assertion, GEC has raised an issue of fact with regard to whether or not its section seven claim is meritorious. If indeed it can be shown that at the time of the acquisition it was not reasonably apparent that the acquisition might substantially lessen competition, GEC's section seven claim should be allowed to proceed notwithstanding the fact that GEC's own actions triggered Bucyrus' right

---

**5.** The parties are in disagreement over when a section seven claim accrues. In an action for damages, as opposed to one for equitable relief, the cause of action accrues when the plaintiff has been injured by the anticompetitive effects made possible by the acquisition of stock. *See Julius Nasso Concrete Corp. v. Dic Concrete*

*Corp.,* 467 F.Supp. 1016, 1024 (S.D.N.Y.1979). *See also Brager & Co. v. Leumi Securities Corp.,* 429 F.Supp. 1341, 1349 (S.D.N.Y.1977), *aff'd,* 646 F.2d 559 (2d Cir.1980), *cert. denied,* 451 U.S. 987, 101 S.Ct. 2322, 68 L.Ed.2d 845 (1981).

to exercise the option and allegedly abuse the control Bucyrus thereby obtained.[6] Since we cannot say that there are no set of facts which would entitle the plaintiffs to relief, *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), we may not dismiss GEC's section seven claim.

*Conclusion*

Because we do not conclude that "there is no basis for federal jurisdiction" under the antitrust laws, we need not address Bucyrus' arguments that the claim under English law should be dismissed.

For the reasons stated, defendant's motion to dismiss is denied in all respects.

SO ORDERED.

---

**6.** Even though a section seven claim for damages does not accrue until the plaintiff is injured by the anticompetitive effects made possible by the acquisition of the stock, *see* note 5, *supra,* we agree with Bucyrus that if it was reasonably apparent when Hornsby granted Bucyrus the option that competition in the relevant industry might be substantially lessened, GEC would be barred from bringing its section seven claim. This is because the express concern of section seven is to prohibit stock acquisitions "the effect of [which] may be substan-

tially to lessen competition," 15 U.S.C. § 18 (1976). Thus, while GEC's claim for damages might not have been cognizable until Bucyrus did something impermissible with its newly acquired stock, unless GEC truly "had no way of knowing" that the effect of the acquisition might be to substantially lessen competition, GEC was indeed a culpable participant in the transaction of which it now complains and should not be allowed to proceed with its section seven claim. But, as stated, this is a question of fact.