814 F.2d 994
 34 Cont.Cas.Fed. (CCH) 75,247
 REX SYSTEMS, INC., Appellant,
v.
George K. HOLIDAY, in his official capacity as Contracting
Officer, U.S. Navy Aviation Supply Office, Philadelphia, Pa.
John F. Lehman, in his official capacity as Secretary of the
Navy; United States Department of the Navy, Appellees,
and
Hazeltine Corporation, Defendant.
 No. 86-1008.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 14, 1986.
Decided April 2, 1987.
 
 Dale C. Nathan (Nathan, Baska & Lerman, Eagan, Minn., Warwick R. Furr, II, Thomas M. Brownell, Lewis, Mitchell & Moore, Vienna, Va., on brief), for appellant.
 George M. Beasley, III, Sr. Trial Counsel (Dept. of Justice, Washington, D.C., Justin W. Williams, U.S. Atty., Alexandria, Va., Richard K. Willard, Asst. Atty. Gen., Susan D. Warshaw, Trial Atty., Washington, D.C., on brief), for appellees.
 Before WIDENER and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 WIDENER, Circuit Judge:
 
 
 1
 This case involves the procurement process relating to the United States Government's requirements for model APX-72 Identification Friend or Foe (IFF) receiver-transmitters.
 
 
 2
 We affirm the judgment for the defendants entered by the district court.
 
 
 3
 On July 17, 1985, Plaintiff, Rex Systems, Inc., filed this action seeking damages, a declaratory judgment, and injunctive relief. In its complaint, Plaintiff named as defendants the United States Department of the Navy, George K. Holiday in his official capacity as Contracting Officer at the United States Navy Aviation Supply Office (ASO) in Philadelphia, Pennsylvania, John F. Lehman, Jr. in his official capacity as Secretary of the Navy, and Hazeltine Corporation, a business corporation which manufactures electronic communications and display systems and which is a competitor of plaintiffs.
 
 
 4
 The subject of this controversy is the Navy's procurement of the APX-72. The APX-72 is an IFF device that is installed in military aircraft and ships. The purpose of the device is to identify, by radar, an approaching aircraft or ship as friend or foe.
 
 
 5
 Over the years, plaintiff, Hazeltine, and other producers have competed for contracts to manufacture APX-72's. For purpose of this action, the United States Government is the only interested buyer of APX-72's. Contracts to produce the APX-72's in question were awarded pursuant to a competitive bidding system (solicitation) as established by federal statute and regulation. See 10 U.S.C. Sec. 2304.
 
 
 6
 The crux of this controversy centers around four such solicitations which occurred in the years 1982, 1984, and 1985. The plaintiff was an unsuccessful bidder in response to the first solicitation in 1982. It has alleged that irregularities took place in the granting of the award. Despite these perceived irregularities, plaintiff concluded that due to the subtle nature of the Navy's actions and the difficulty it would have in obtaining evidence to support its claim, it would be impractical to challenge the Contracting Officer's decision. Plaintiff does not challenge this contract award here, except insofar as it alleges that the government was involved in a conspiracy to assist plaintiff's competitor to monopolize this procurement market.
 
 
 7
 The second solicitation involved was issued on October 14, 1982. Only five days (and three work days) prior to the bid opening date, plaintiff asked the ASO, by telex, a question about the bid and requested a 30 day delay in the opening of the bids. A provision in the solicitation form (SF 33) required that requested explanations be in writing and be submitted in sufficient time to allow a reply to reach offerors before submission of their offers. The ASO did not respond or delay the bidding and plaintiff did not bid. Again, plaintiff does not challenge this award.
 
 
 8
 The next relevant solicitation took place in early 1984. On this particular occasion, plaintiff was the low bidder and was awarded the contract. However, plaintiff asserts that soon after it was awarded the contract, defendant Holiday began efforts to discourage plaintiff from going forward with it. In addition, plaintiff contends that the ASO attempted to prevent it from performing its contract by refusing to grant the plaintiff information and materials needed to perform. This, plaintiff claims, was a violation of the 1984 contract. Finally, on March 1, 1985, ASO terminated the plaintiff's contract on the ground that plaintiff was in default. Plaintiff thereafter filed a complaint with the Armed Services Board of Contract Appeals (ASBCA) alleging that the Government's termination of the contract was wrongful.
 
 
 9
 The final solicitation in issue was in January, 1985. Here, plaintiff alleges that since Hazeltine's bid was "just under" plaintiff's bid, the government must have improperly disclosed to Hazeltine the amount of plaintiff's bid before the bid opening. The record indicates that Hazeltine underbid plaintiff by $29,785. Once again, plaintiff does not challenge the award of this contract, except as a part of the anti-trust claim.
 
 
 10
 Plaintiff claims that the actions of the defendants were in furtherance of a conspiracy to create and maintain a monopoly for Hazeltine in the market of procurement of APX-72's. In its prayer for relief, plaintiff requested that the district court enter a declaratory judgment that defendants conspired to violate the anti-trust and procurement laws; award treble damages for anti-trust violations; enjoin defendants from future violations of the anti-trust and procurement laws; and award costs.
 
 
 11
 The district court granted summary judgment for Hazeltine finding that there was no triable issue of fact and that Hazeltine had neither monopolized nor conspired to monopolize the relevant market. Plaintiff has not contested this ruling, and thus Hazeltine is out of the case. Accordingly, our review of the decision below is limited to only those rulings which concern the federal defendants.
 
 
 12
 The district court entered judgment in favor of the Navy Department because it was not a "person" within the meaning of the anti-trust laws.
 
 
 13
 The court also stated that since the Contracting Officer and Secretary of the Navy were sued in their representative capacities, they should be dismissed. Finally, the lower court decided that any other claim plaintiff may have had should be addressed to the United States Claims Court or the ABSCA.
 
 
 14
 We first consider the issue of the anti-trust claim. Plaintiff alleges that the federal defendants conspired with Hazeltine and various unnamed firms, corporations, individuals, and other entities, to monopolize the nationwide market for United States Government procurement of APX-72's in violation of the Sherman Act. Sections 1 and 2 of the Sherman Act, of course, prohibit both conspiracies in restraint of trade and conspiracies to monopolize trade or commerce by a "person". 15 U.S.C. Secs. 1, 2. The term "person", or "persons", is defined for purposes of the Sherman Act to include corporations and associations. 15 U.S.C. Sec. 7. The issue of whether the agencies or other instrumentalities of the United States are persons who can be sued under the anti-trust laws has recently been addressed by the D.C.Circuit in Sea-Land Service, Inc. v. Alaska Railroad, 659 F.2d 243 (D.C.Cir.1981), cert. denied, 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982). In Sea-Land, the court faced the issue of "whether the Alaska Railroad, an entity wholly owned and operated by the United States, is amenable to suit for treble damages under the Sherman Act for alleged anti-competitive conduct." Id. at 244. That court held that the United States and its agencies are not so subject to suit. Id. at 247. E.g. Jet Courier Services v. Federal Reserve Bank, 713 F.2d 1221, 1228 (6th Cir.1983) (Federal Reserve System, as an agency of the federal government, may not be sued under the Sherman Act); Greenwood Utilities v. Mississippi Power Co., 751 F.2d 1484, 1504 (5th Cir.1985) (Southeastern Power Administration, a division of the Department of Energy, not subject to the anti-trust laws); Tele-Communications v. United States, 757 F.2d 1330, 1341 (D.C.Cir.1985) (United States Air Force exempt from anti-trust laws); Department of Water and Power v. Bonneville Power Administration, 759 F.2d 684, 693 n. 12 (9th Cir.1985) (Bonneville Power Administration, a federal agency within the Department of Energy, not subject to anti-trust laws; Sakamoto v. Duty Free Shoppers, Ltd., 764 F.2d 1285, 1288 (9th Cir.1985) (Government of Guam immune from anti-trust liability).
 
 
 15
 We find the Sea-Land court's holding to be persuasive. It depended upon United States v. Cooper Corp., 312 U.S. 600, 606, 61 S.Ct. 742, 744, 85 L.Ed. 1071 (1941) in which the court held that (prior to 1955 amendments) the United States was not a "person" entitled to maintain an action under what is now 15 U.S.C. Sec. 15(a). It reasoned that this is the case because to hold otherwise would render the United States a "person" subject to suit as an anti-trust defendant. 312 U.S. 606, 61 S.Ct. at 744. In 1955, Congress reacted to the Cooper decision by amending the anti-trust laws to permit the United States to sue for actual (as opposed to treble) damages when it suffers anti-trust injury. 15 U.S.C. Sec. 15a. However, the rationale of Cooper relating to the federal government's role as an anti-trust defendant remains unaffected. In Jefferson County Pharmaceutical Association v. Abbott Laboratories, 460 U.S. 150, 103 S.Ct. 1011, 74 L.Ed.2d 882 (1983), a suit over a State's exemption under the Robinson-Patman Act, the court construed Cooper as holding that the United States was not a "person" under the Sherman Act for the purpose of suing for treble damages. So, the Court yet relies upon Cooper, and we follow its reasoning.
 
 
 16
 Since defendants Holiday and Lehman were sued in their official capacities, this reasoning applies to them also. Therefore, we hold that all the federal defendants are not "persons" under the Sherman Act and so subject to suit against them.
 
 
 17
 Plaintiff's remaining claims are asserted under the federal procurement laws. Without referring us to any particular statute or regulation, the plaintiff seeks "declaratory and injunctive relief under the Federal Procurement laws which require the maximum practical competition in procurement of goods for the United States Government." The aim of this relief would be to require the federal government to comply with the procurement laws in awarding future contracts. The district court concluded that the plaintiff's procurement claims should be addressed to the United States Claims Court or the Armed Services Board of Contract Appeals (ASBCA), no doubt referring to 28 U.S.C. Sec. 1491(a)(3) and 41 U.S.C. Sec. 607(d) respectively. We agree.
 
 
 18
 We note initially that plaintiff has, prior to this appeal, already filed a claim with the ASBCA with respect to its 1984 contract. Plaintiff's only other forum for the claim it asserts under the procurement laws is the United States Claims Court. The relevant statute, 28 U.S.C. Sec. 1491(a)(3), "[t]o afford complete relief on any contract claim brought before the contract is awarded," gives the Claims Court "exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it seems proper, including but not limited to injunctive relief." This provision of Sec. 1491 was added by the Federal Courts Improvement Act for the purpose of giving the "Claims Court the power to grant ... equitable relief in contract actions prior to award." S.Rep. No. 97-725, 97th Cong., 2d Sess. 22, reprinted in 1982 U.S.Code Cong. & Ad.News 11, 32. This is plaintiff's claim here; it seeks future "injunctive relief necessary to assure competition in future APX-72 procurements." Congress has determined that such a claim should be prosecuted only in the Claims Court.
 
 
 19
 The judgment of the district court is accordingly,
 
 
 20
 AFFIRMED.