NORTH JERSEY SECRETARIAL SCHOOL, INC., Plaintiff,

v.

Robert McKIERNAN, Barbara Heisler Williams, Robert Biehl, Ronald Lipton, and United States Department of Education, Defendants.

No. 88 Civ. 8033 (RWS).

United States District Court, S.D. New York.

April 3, 1989.

---

Summit Rovins & Feldesman, New York City, for plaintiff (Ira G. Greenberg and Kathryn J. Fritz, of counsel).

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City, for defendants (Nancy L. Savitt, Asst. U.S. Atty., of counsel).

## OPINION

SWEET, District Judge.

Defendants United States Department of Education (the "Department"), Robert McKiernan ("McKiernan"), Barbara Heisler Williams ("Williams"), Robert Biehl ("Biehl"), and Ronald Lipton ("Lipton"), have moved pursuant to Federal Rules of Civil Procedure 8, 11, and 12 to dismiss the complaint of plaintiff North Jersey Secretarial School Inc. d/b/a First School for Careers ("First School") alleging that the Department unlawfully terminated First School's funding under federal financial aid

programs. Defendants also seek sanctions against First School and its counsel for bringing a meritless proceeding. First School seeks leave to amend its complaint. For the reasons set forth below, First School's request to amend its complaint is granted, but the amended complaint is dismissed. The Department's request for sanctions is denied in part and granted in part.

### The Parties

First School is a New Jersey corporation that provides vocational education for adults. Jean–Claude Levy, the president ("Levy") and his wife Beverly Jane Levy, the vice-president, own and manage First School. Both are Jewish, and Levy is a French national.

The Department, a cabinet level department of the United States government, makes loans and grants to students enrolled in vocational institutions. McKiernan, Williams, Biehl, and Lipton are Department employees. Lipton is the immediate supervisor of the other three employees, all of whom are assigned to Region 2 in Manhattan.

### The Pleadings

First School currently participates in two federal student financial aid programs: Pell Grants ("Pell") and Guaranteed Student Loans ("GSL"). The Department conducts "program reviews" of participating institutions through its regional offices to enforce applicable regulations and to ensure that the institutions are not misappropriating or wasting funds. In May 1988, Williams and Biehl reviewed First School's GSL participation, and the Department instituted an "emergency termination" on the basis of that review.

In response, First School commenced an administrative proceeding. With that proceeding still pending, First School brought this action in federal district court seeking damages and injunctive relief.

First School's amended complaint includes four claims. The first claim alleges a denial of due process guaranteed by the Fifth Amendment to the United States Constitution:

14. An exit interview is intended to and in other cases, on information and belief, uniformly does set forth the program reviewers' proposed findings and gives the institution an opportunity to respond. In this case, however, the program reviewers presented First School their final findings, which had already been typed on Department Letterhead, at the close of the exit interview. First School had no real opportunity to respond.

16. The individual defendants then promptly caused the "emergency" termination of federal funding to First School, even though there was no emergency, there had been no loss of federal funds, and there was no threat of loss of federal funds in the future, as required for such a termination. That termination was eventually reversed by an Assistant Secretary of Education, but not before the school nearly went out of business by being without federal funds for over five months.

19. Both before and after the administrative hearing, defendants acted to harm First School in derogation of prior administrative rulings and First School's legal rights. In addition to requiring First School to engage in massive records reconstructions irrespective of the proceeding before the Administrative Law Judge, defendants also delayed making payments to which First School was undoubtedly entitled and attempted to impose unwarranted conditions on such payments which would delay them still further. As a result, First School has suffered enormous financial loss already, and its entire business has been put in grave jeopardy.

The second claim charges a violation of the Civil Rights Act, 42 U.S.C. § 1981:

23. In addition, the individual defendants have recommended penalties, including closure, orders of magnitude more severe than those imposed in what are obviously far more serious cases, including instances of multiple outright thefts of federal funds, as to lack any rational foundation here.

24. On information and belief, the individual defendants, in conspiracy with each other and others, were actuated, at least to a substantial degree, by a desire to discriminate against non-United States nationals. On information and belief, McKiernan was also actuated by a desire to discriminate against Jews.

25. In addition to disparaging comments about Mr. Levy's nationality, Mr. McKiernan in particular insisted that Mr. Levy violated the mandatory period of observance of a parent's death (Shivah) if he were to participate in certain parts of the review process. Mr. McKiernan's comments on that occasion evidenced a disdain for observant Jews in general and Mr. Levy in particular.

The third claim for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, states:

28. On information and belief, the individual defendants have conspired with First School's competitors to drive First School from the business of adult vocational education in the United States and, more particularly, in Passaic County, New Jersey, and the San Juan and Mayaguez areas of Puerto Rico.

29. Among those who have conspired with defendants on information and belief, are Richard Hastings and Victor Biebekhauser and the schools with which they are affiliated, Careercom (formerly called Educom). Careercom has opened schools in close proximity to First School and would profit greatly if First School were driven from the business.

30. The intent of the conspirators has been, and, since there are very few schools like First School in the geographic markets described in paragraph 28 of this complaint, the effect, if successful, of the conspiracy would be, substantially to lessen competition in the relevant markets.

The fourth claim for tortious interference states:

33. The individual defendants have tortiously interfered with First School's prospective business advantage without justification.

*Prior Proceedings*

After the Department terminated First School's federal funding, First School initi-

ated a hearing before an Administrative Law Judge (the "ALJ") in Washington, D.C. An Assistant Secretary of Education reversed the emergency termination, and the administrative action proceeded. At oral argument, First School's counsel indicated that the ALJ has issued a ruling unfavorable to the school, but First School has yet to appeal.

First School filed this complaint on November 28, 1988 seeking a preliminary injunction. The request for a preliminary injunction was denied on November 14, 1988.

First School has moved to amend and supplement the complaint and to lift the stay on discovery, alleging that the defendants' delay in making payments to First School caused First School financial loss and jeopardized its business. The Department's motion to dismiss the complaint was argued and considered fully submitted on Friday, December 22, 1988, and First School's motion was argued and considered on Friday, March 10, 1989.

*Motion to Amend the Complaint*

■ First School has moved to amend its first, second, and third claims. For the reasons set forth below, First School's motion to amend its complaint is granted.

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings should be freely given when justice so requires. However, the Supreme Court has stated that leave to amend should not be granted where there exists undue delay, bad faith or dilatory notice on the part of the mover, undue prejudice to the opposing party, or futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

None of these factors is present here. First School has moved to amend its complaint within three months of filing the original complaint. There is no evidence of bad faith, and the proposed amendment will not prejudice the Department. Accordingly, First School's request to amend its complaint is granted.

*Standard for a Motion to Dismiss*

A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts supporting his claim that entitles him to relief. *See Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir. 1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). In considering a 12(b)(6) motion to dismiss, a court must construe the complaint's allegations in the light most favorable to the plaintiff and accept these allegations as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Ass'n.*, 423 F.2d 188, 191 (2d Cir.1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed. 2d 92 (1970); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1363, at 656 (1969).

*Ripeness*

■ Because First School seeks judicial review for injuries it may never suffer based on agency and administrative procedures that have yet to result in a final adverse determination, this action is not ripe for determination, and First School's amended complaint is dismissed.

According to the United States Supreme Court, to determine whether a claim is ripe for judicial review courts must evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The first—fitness for judicial decision—requires a court to consider a:

> variety of pragmatic factors: whether the agency's actions or inactions challenged in the law suit are 'final,' whether the issues presented for review are primarily legal as opposed to factual in nature, and whether administrative remedies have been exhausted at least to the extent that an adequate factual record has been established.

*Seafarers Int'l Union of North Am. v. United States Coast Guard*, 736 F.2d 19, 26 (2d Cir.1984) (citations omitted). In considering the second—hardship—the fact

that "all plaintiff's constitutional and statutory claims can be presented in the administrative proceeding" weighs heavily against any hardships to the parties from withholding court consideration. *See Lang v. Berger*, 427 F.Supp. 204 (S.D.N.Y.1977); *see also Seafarers*, 736 F.2d at 88.

Applying that test here, First School's cause of action is not ripe for judicial review. The Department's action is not final because First School may appeal the ALJ's ruling. Depending upon that appeal's outcome, the termination may never become effective. *See Lang v. Berger*, 427 F.Supp. 204 (S.D.N.Y.1977).

Moreover, these issues are primarily factual rather than legal. At issue is whether First School complied with the applicable regulations and whether the Department properly terminated First School's funding.

First School has not exhausted its administrative remedies. Although the ALJ has issued a ruling, First School may appeal that ruling to the Secretary of Education ("Secretary") within 20 days of the ALJ's decision. 34 CFR § 688.90(c)(1). In a prior case concerning the Department, the Supreme Court held that, "at least in the absence of an appealable collateral order, the federal courts may exercise jurisdiction only over a final order of the Department." *Bell v. New Jersey*, 461 U.S. 773, 778–779, 103 S.Ct. 2187, 2191, 76 L.Ed.2d 312 (1983). As noted above, there has been no final order in this case because the administrative proceedings are still pending.

Nor has an adequate factual record been established. As the Second Circuit has explained:

The rationale behind the exhaustion doctrine is that a court's refusal to intervene prematurely in the administrative process gives the agency an opportunity to develop factual findings, to apply its expertise to new issues and to exercise its discretionary powers. Moreover, "notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors"—a practice that will protect the integrity of the administrative process and prevent litigants from flouting the agency's procedures.

*Touche Ross & Co. v. SEC*, 609 F.2d 570, 574 (2d Cir.1979).

The harms First School alleges do not present hardship sufficient to warrant judicial intervention. First School can raise its constitutional and statutory claims in the administrative proceedings and, if it is dissatisfied with the outcome, appeal to the Secretary.

First School contends that its situation presents an exception to the exhaustion requirement. There are three recognized exceptions to the exhaustion requirement: (1) where resorting to the administrative remedy would be futile; (2) where administrative remedies are inadequate; and (3) where irreparable injury would result unless immediate judicial review is permitted. *See* 5 J. Stern, G. Mitchell & B. Mezzines, *Administrative Law* § 49.02, at 49–15 (1988). None of these exceptions applies here.

The administrative remedy is not futile. The administrative proceeding will determine whether there are grounds for terminating First School's funding and whether First School has a cause of action in federal court due to any injuries resulting from the final decision.

First School's bias allegation is not sufficient to support a finding that the administrative remedy is inadequate. In *Touche Ross & Co. v. SEC*, 609 F.2d 570 (2d Cir. 1979), the Second Circuit stated: "allegations of agency bias or prejudgment based on ex parte communications are insufficient for injunctive relief and cannot be reviewed until the agency has made an adverse determination and an appeal has been taken raising these claims on the record as a whole." *Id.*, at 575.

Finally, there can be no irreparable injury until the administrative process has determined whether termination is warranted. As noted above, if termination is warranted there will be no injury.

In view of the decision on ripeness, the immunity issue and the civil rights claim are not reached.

*The Sherman Act Violation Claim*

■ Because First School alleges an ongoing conspiracy between the Department, its employees and Careercom that is in restraint of trade under the antitrust violation alleged in the complaint, the question of ripeness does not arise. However, First School's third claim under section 1 of the Sherman Act, 15 U.S.C. § 1, is dismissed because First School has not properly defined the relevant product market and the effect of the alleged conspiracy on that market.

Section 1 of the Sherman Act, 15 U.S.C. § 1 provides a cause of action for any conspiracy in restraint of trade. *Id.* To allege an antitrust violation:

> [e]xcept in the narrow class of *per se* cases, a plaintiff . . . must show that the defendants acted to restrain competition. In order to make such a showing and thereby survive a motion to dismiss, a section 1 claimant must identify the relevant product market and "allege how the net effect of the alleged violation is to restrain trade in the relevant market, and that no reasonable alternative source is available" to consumers in that market.

*International Television Prod. Ltd. v. Twentieth–Century Fox Television,* 622 F.Supp. 1532 (S.D.N.Y.1985). *See also Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,* 614 F.2d 832, 840 (2d Cir.1980); *Coniglio v. Highwood Services, Inc.,* 495 F.2d 1286, 1292 (2d Cir.), *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974).

The relevant geographic market is defined simply as the geographic area where competition occurs. *See Tampa Electric Co. v. Nashville Coal Co.,* 365 U.S. 320, 327, 81 S.Ct. 623, 628, 5 L.Ed.2d 580 (1961).

First School defines the relevant product market as "the business of adult vocational education in the United States and, more particularly, in Northern New Jersey and Puerto Rico." While a complaint that specifically defines the alleged relevant product market need not prove on the face of the complaint that the market is the proper one, *see Walker Process Equipment, Inc.*

*v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 177, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965), First School has not sufficiently alleged a specific market either geographically or in terms of subject matter to withstand the motion to dismiss.

In *Gianna,* the Court held that the definition of the relevant market—international beauty pageants—is inadequate, for "[p]laintiff simply delineates the product market based on the perceived similarity of services offered. This bears no rational relation to the methodology courts prescribe to define a market for antitrust purposes—analysis of the interchangeability of use or the cross-elasticity of demand for potential substitute products." 551 F.Supp. at 1354. Similarly, here, First School fails to explain the basis for its determination that "the business of adult vocational education . . . in New Jersey and Puerto Rico" is the relevant market. Without further explanation, it is unclear why such a broad category, which includes, for example, such apparently unrelated institutions as cooking schools, schools for fine arts, adult education courses given at the local high school, classes by TV and even training programs of private corporations —is First Jersey's relevant market. Without an adequate market definition it is impossible even to approximate the market effect of the Department's alleged conspiracy. *See Gianna Enterprises v. Miss World (Jersey) Ltd.,* 551 F.Supp. 1348, 1354 (S.D.N.Y.1982).

■ First School has "not specified the economic impact in the relevant market." *Id.* ; *Larry R. George Sales Co. v. Cool Attic Corp.,* 587 F.2d 266, 273 (5th Cir. 1979) (plaintiff must show "that the alleged restraint of trade tends or is reasonably calculated to prejudice the public interest"). Further, there is no allegation of how the closing of First School will have the effect of "substantially lessen[ing] competition in the relevant markets," nor does the complaint allege the lack of reasonable alternative sources for consumers of adult vocational education. In short, the public interest will not be prejudiced by the closing of First School.

Beyond its bald conclusions as to restraint of trade, the complaint fails to allege facts which show injury to competition, as distinct from injury to a competitor. No violation of Section 1 of the Sherman Act is possible absent proof of anti-competitive effect beyond the injury to plaintiffs, and facts must be pleaded from which such effect can be inferred.

*Jarmatt Truck Leasing Corp. v. Brooklyn Pie Co.*, 525 F.Supp. 749, 750 (E.D.N.Y. 1981) (citations omitted) (antitrust claim dismissed). *Accord Larry R. George Sales*, 587 F.2d at 273, 274.

First School has failed to distinguish the authorities cited by the defendants and relied upon above.

■ Further, First School has alleged that "the individual defendants have conspired with First School's competitors" to drive First School out of business. Such an allegation is insufficient to satisfy the pleading requirements of Fed.R.Civ.P. 8(a)(2). *See Heart Disease Research Foundation v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir.1972) ("a barebones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal").

Even notice pleading requires that facts be pleaded to support a conspiracy claim. *See International Television Productions Ltd.*, 622 F.Supp. at 1537 (S.D.N.Y.1985) ("The complaint must identify the co-conspirators, and describe the nature and effects of the alleged conspiracy"); *Mountain View Pharmacy v. Abbott Laboratories*, 630 F.2d 1383, 1388 (10th Cir.1980) ("A blanket statement that twenty-eight defendants have conspired to fix prices on drug sales to thirteen plaintiffs does not provide adequate notice for responsive pleading"); antitrust claim dismissed pursuant to Rule 8(a)(2); *Garshman v. Universal Resources Holding, Inc.*, 625 F.Supp. 737, 741 (D.N.J.1986) ("to overcome defendant's motion to dismiss, plaintiffs must allege the existence of a conspiracy with a unity of purpose, identify its parties, and cite actions allegedly taken to effectuate it"); antitrust claim dismissed; *General Electric Co. v. Bucyrus Erie Co.*,

563 F.Supp. 970, 975 (S.D.N.Y.1983) (no dismissal of 15 U.S.C. § 1 claim where plaintiff "has identified the co-conspirators and described the nature and effects of the alleged conspiracy").

■ Finally, § 1 of Title 15, U.S.C., provides, in pertinent part, for liability against every "person" who violates its provisions. The term "person" is defined in 15 U.S.C. § 7:

> The word "person" or "persons" wherever used in section 1 to 7 of this title shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the territories, the laws of any state, or the laws of any foreign country.

This definition does not include the Federal Government or its employees. Antitrust lawsuits brought against United States agencies and their officials cannot be maintained. *See, e.g., Rex Systems, Inc. v. Holiday*, 814 F.2d 994, 996–97 (4th Cir. 1987) (U.S. Dep't of the Navy, and contracting officer and Secretary of Navy, sued in their representative capacities, are not "persons" under Sherman Act; suit dismissed); *Sea–Land Service, Inc. v. Alaska R.R.*, 659 F.2d 243, 244 (D.C.Cir.1981) ("Congress did not place the United States or its instrumentalities under the governance of the Sherman Act"; upholding dismissal of action against "the Alaska Railroad and the United States agencies and officers that supervise its operation"), *cert. denied*, 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982).

*Tortious Interference and Immunity*

■ First School's final claim purports to allege a common law cause of action for tortious interference with prospective business advantage against the individual defendants. Because federal employees are absolutely immune from liability for tortious acts committed within the scope of their official duties, this cause of action against the individual defendants must be dismissed. *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (feder-

al actions, even where malice is alleged); Pub.L. 100–694, discussed *infra.*

The rationale for the rule of absolute immunity was stated by Judge Learned Hand in *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950):

It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know if the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found n a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrong done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

■ For a federal employee to be absolutely immune from common law tort liability, the allegedly tortious act must be within the scope of the authority, or within the outer perimeter of the line of duty, of the federal employee, and his duties must involve the exercise of judgment or discre-

tion. The first requirement is satisfied where the employee was acting in his role as a government employee and any actions which were taken by the employee were taken in the course of his official duty.

Actions within the outer perimeter of an official's line of duty have been defined as those actions not manifestly or palpably beyond his authority, but rather more or less connected with the general matters committed to his control or supervision.

*Bartel v. FAA,* 617 F.Supp. 190, 196 n. 27 (D.C.D.C.1985). *See also Galella v. Onassis,* 487 F.2d 986, 993 (2d Cir.1973); *Bivens v. Six Unknown Named Agents,* 456 F.2d 1339, 1348 (2d Cir.1972). In this case, the individual defendants were beyond any doubt acting in the course of their official duties when they took actions with respect to plaintiff's compliance with the rules governing federal student financial assistance programs.

■ Moreover, the Second Circuit has held that allegations of malice or intent to harm do not place the actions complained of outside the outer perimeter of the line of duty. *See e.g., Ove Gustavsson Contracting Co. v. Floete,* 299 F.2d 655 (2d Cir. 1962), *cert. denied,* 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963); *Gregoire v. Biddle,* 177 F.2d at 581. The alleged tortious act must be "the result of a judgment or decision which it is necessary that the Government official be free to make without fear or threat of vexatious or fictitious suits and alleged personal liability." *Ove Gustavsson Contracting,* 299 F.2d at 659; *see Newkirk v. Allen,* 552 F.Supp. 8, 11 (S.D.N.Y.1982). Where an official is sued in common law tort for discharging his non-ministerial functions (*i.e.,* discretionary ones), absolute immunity protects him even where his particular discretion is relatively limited. It is enough that the challenged conduct is "connected with a 'discretionary function'" that falls within the official's line of duty. *Williams v. Collins,* 728 F.2d 721, 727 (5th Cir.1984). As this court noted in *Newkirk v. Allen,* 552 F.Supp. at 11:

[O]nce it is established that the official was acting within the scope of his authority, the only issue left to be decided

is whether the purposes of the immunity doctrine best would be fulfilled by cloaking the particular act complained of with immunity from civil tort liability.

Therefore, the common law tortious interference claim against the individual defendants must be dismissed. This is so notwithstanding the limited immunity waiver of the Federal Torts Claims Act.

First School's contention that the Department employees cannot enjoy absolute immunity under the holding in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988) is without merit. Pub. L. 100–694 § 2(a)(4) and 2(b) have legislatively overruled the *Westfall* decision. In the *Westfall* opinion the Supreme Court noted that Congress is in the best position to determine the extent of a Federal employees personal ability for common law torts, and added that congressional consideration of this issue would be helpful. *See* Pub.L. 100–694 § 2(a)(7). Congress noted that *"Westfall v. Erwin* ha[s] seriously eroded the common law tort immunity previously available to Federal employees," Pub.L. 100–694 § 2(a)(4). Subsequently, under the recently enacted Federal Employee Liability Reform and Tort Compensation Act of 1988, Congress amended the FTCA so as to "protect Federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States." Pub.L. 100–694 § 2(b). Congress accomplished this objective by amending 28 U.S.C. § 2679(b) to provide that an action under the FTCA against the United States "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim ... Any [such action against an employee] is precluded without regard to when the act or omission occurred." Thus First School can maintain no cause of action for common law tortious interference against the individual defendants.

■ Nor can First School bring such an action directly against the United States. Under 28 U.S.C. § 2680, the United States expressly did not waive its sovereign immunity for:

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

.     .     .     .     .

(h) Any claim arising out of ... interference with contract rights....

First School's tortious interference claim, therefore, must be dismissed.

*Rule 11*

■ Rule 11 sanctions will not be imposed upon First School for bringing this suit. In order to impose Rule 11 sanctions against First School, the Second Circuit has stated:

the district court must ... scrutinize the objective reasonableness of the attorney's pre-filing inquiry and the basis for the claim developed by that inquiry. If the inquiry was objectively reasonable under the circumstances and disclosed a reasonable factual basis for the claim, then sanctions are not appropriate.

*Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1470 (2d Cir.1988).

Despite First School's failure to deal with many of the issues raised by the defendants, the perceived exigencies surrounding the initiation of this action and the nature of the "ripeness" issue tend to justify the filing of the complaint.

There is no evidence that First School commenced the proceeding for other than a lawful purpose. This action is an instance where the application of a Rule 11 sanction would have a chilling effect and where the facts, at least facially, permitted the filing of the action. Thus, the Department's request for sanctions is denied.

As for the individual defendants, given the state of law discussed above, a reasonable prefiling inquiry should have precluded their inclusion in the complaint. Sanctions in the amount of $2,500 to be assessed against First School appear warranted and reasonable. A further hearing will be conducted on April 21, 1989 if requested by any party.

*Conclusion*

For the reasons set forth above, First School's amended complaint is dismissed without prejudice and with costs. The defendants' motion for sanctions is denied in part and granted in part. Enter judgment on notice.

It is so ordered.